LAW OFFICE OF BERNARD V. KLEINMAN, PLLC
By:     Bernard V. Kleinman, Esq.
        108 Village Square
        Suite 313
        Somers, NY 10589-2305
        Tel. 914.644.6660
        Fax 914.694.1647
        Email: *attrnylwyr@yahoo.com*
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
===================================:
TANIQUE WRIGHT,                      :
                        Plaintiff,   :      Case No. 20-cv- 2393
                                     :
                                     :
— *versus* —                         :      **COMPLAINT & JURY**
                                     :            **DEMAND**
                                     :
BALL METALPACK CORP.,                :
PLATINUM EQUITY,                     :
JANICE RODRIGUEZ, and JOHN DOEs,     :
Individually, Jointly and Severally, :
                        Defendants.  :
===================================:

1. Plaintiff, TANIQUE WRIGHT, by way of Complaint, by and through her attorney of

record, Bernard V. Kleinman, an attorney duly admitted to practice before the Bar of this Court,

does hereby aver and allege as follows,

## INTRODUCTION & BACKGROUND

2. In or around April 2019, the named Plaintiff herein, TANIQUE WRIGHT ("WRIGHT"),

a 43 year old African-American female, applied for and was employed as a Director in the Human

Resources Department of the named Defendant BALL METALPACK CORP. ("BALL"), In that

position she reportedly directly to the Vice-President for Human Resources, the named Defendant

JANICE RODRIGUEZ ("RODRIGUEZ"). In that capacity she served diligently and received

multiple kudos both from her employer and her employer's contractors.

3. In or around March 18, 2020 the Plaintiff suffered a stroke and was hospitalized for several days.

4. Plaintiff WRIGHT immediately notified her employer, Defendant BALL, and her supervisor Defendant RODRIGUEZ.

5. Plaintiff WRIGHT was advised to contact another Director in the Human Resources Department ("HR") to apply for benefits to which she was entitled as an employee and under applicable law.

6. On March 27th, 2020, barely one week later, without any prior warning, and in total disregard of the Plaintiff's medical condition, and no concern for her emotional and psychological well-being, she was notified, inhumanely, maliciously and cruelly, not by her supervisor Defendant RODRIGUEZ, but by another Director in Human Resources, that she had been terminated from her employment.

7. On or about March 27, 2020 the Plaintiff was offered a severance package, and was given until April 3rd to decide whether to take it or not; the Plaintiff turned this down as inadequate compensation and as a violation of applicable law.  See **Exhibit 1**.

8. On or about March 27, 2020, the Plaintiff filed a Complaint with the Colorado Civil Rights Division/EEOC.  See **Exhibit 2**.

9. On August 5th, 2020, the EEOC issued a Right to Sue Letter.  See **Exhibit 3**.

## PARTIES

10. Plaintiff TANIQUE WRIGHT is a 43 year old female, of African-American race.

11. Defendant BALL METALPACK CORP., (previously organized under the name of Ball Corporation) is a corporation organized under the laws of the State of Indiana, with its headquarters and main office located at 8001 Arista Place, Bloomfield, CO 80021.

12. At all relevant times, BALL has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e-(b), (g) and (h); the Age Discrimination in Employment Act, 29 U.S.C. § 630(b); the Family and Medical Leave Act, 29 U.S.C. §§ 2611(2)A), (4)(A)(i); the Civil Rights Act, 42 U.S.C. § 2000e; the Americans with Disabilities Act, 42 U.S.C. § 12111(4), (5)(A); the Colorado Fair Employment Practices Act, C.R.S. § 24-34-402(7); and all other relevant statutes as cited herein.

13. Upon information and belief, Defendant BALL, is a wholly owned business entity of Defendant PLATINUM EQUITY ("PLATINUM"), a private equity investment firm, with headquarters located 360 N. Crescent Dr.,  Beverly Hills, CA 90210.

14. Upon information and belief Defendant PLATINUM EQUITY acquired a managerial controlling interest in Defendant BALL in or around June 21, 2018, through the investment vehicle of Platinum Equity Capital Partners IV.  See **Exhibit 4**.

15. Defendant JANICE RODRIGUEZ is, upon information and belief, a Caucasian female, and, for all times relevant herein, served as the Vice-President for Human Resources and Legal Affairs for Defendant BALL METALPACK CORP.

16. Upon information and belief, Defendant RODRIGUEZ is a resident of the County of Adams, State of Colorado.

17. Defendants JOHN DOEs are employees, staff, managers, and other personnel of Defendant BALL who knowingly, and intentionally, engaged in conduct that violated the civil rights of the named Plaintiff by executing and following the unlawful directions and orders of the named Defendants BALL, RODRIGUEZ, and PLATINUM.

## JURISDICTION & VENUE

18. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*; Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a); the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 623(a), which incorporates by reference Section 216 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. § 216; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2614; the Americans with Disabilities Act, 42 U.S.C. § 12102 *et seq.*; and, the Colorado Fair Employment Practices Act (Colo. Rev. Stat. ("CRS") § 24-34-402.

19. Plaintiff further invokes the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

20. The incidents which give rise to this cause of action occurred within this jurisdiction, the District of Colorado, and within three years of the filing of this Complaint.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), as amended by Section 311 of the Judicial Improvement Act of 1990, by reason of it being the location where all, or substantially all, of the events or omissions giving rise to the claims occurred, and where one or more, upon information and belief, of the Defendants reside.

22. Plaintiff seeks attorney fees and costs pursuant to 42 U.S.C. § 1988.

23. Plaintiff seeks both compensatory and punitive damages under 42 U.S.C. § 1981a.

24. More than thirty days prior to the institution of this lawsuit, Plaintiff WRIGHT filed a charge of discrimination with the Colorado Department of Civil Rights ("CCRD"), and the United

States Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII, and the ADEA, and violations of federal and state Civil Rights laws.  See **Exhibit 2**.

25. On or about March 27, 2020, WRIGHT filed a charge of discrimination with the CCRD/EEOC, charge number 541-2020-01829, alleging unlawful employment practices occurring within three hundred days or less from the date of filing the charge.  See **Exhibit 2**.

26. On or about August 5th, 2020, WRIGHT received a Notice of Right to Sue on charge EEOC Charge No. 541-2020-01829.  See **Exhibit 3**.

## ADDITIONAL RELEVANT FACTS MATERIAL TO ALL CAUSES OF ACTION

27. The Plaintiff, WRIGHT, is an African-American female, born in 1977 (and thus over the age of forty).  She graduated from Colorado Technical University, in 2008, with degrees in Information Technology and Management Information Systems.  Among her positions, prior to being em-ployed by Defendant BALL, she worked in human resources in a number of companies, including Jabil, Inc., Intuit, and Comcast.

28. Immediately prior to being employed by BALL, in April 2019, she served as the Vice President for Human Resources at Professional Bull Riders with a salary of $127,000.  Induced to come to BALL based upon representations as to her autonomy, the outward diversity of the company, the opportunity to expand her acumen and train it on BALL, she entered this employ-ment with BALL with the full intent to remain there for as long as she could.

29. When Plaintiff applied for this position she was interviewed by Douglas Hedges, the then Vice President for Human Resources ("HR") at BALL.

30. She was hired as Director of Talent Management, and reported directly to Defendant JANICE RODRIGUEZ ("RODRIGUEZ"), the corporate successor to Douglas Hedges at BALL.

31. Upon information and belief, although RODRIGUEZ has a Hispanic name, she is Caucasian, and it is her husband, who is Hispanic, and, upon information and belief, Mexican by birth.

32. RODRIGUEZ, herself, reported to the President of the company, James Peterson (also Caucasian).

33. In Plaintiff's Department (*i.e.*, Human Resources) there were five additional Managers or Directors, all of whom reported either directly or indirectly to Defendant RODRIGUEZ.  These were:

> Colleen Callies (Director of HR Operations) — Reported to Defendant RODRIGUEZ

> Jennifer Baker (Corporate HR Manager) – Reported to Colleen Callies

> Sean Ochs (HR Generalist) – Reported to Colleen Callies

> Sarah King (Director of Total Rewards) — Reported to Defendant RODRIGUEZ

> Julie Stiles (Payroll Manager) — Reported to Sarah King (White)

34. All five of these persons are white — Plaintiff WRIGHT being the only person of color in a Director position in the HR Department at BALL.

35. Indeed, upon information and belief, BALL has several thousand employees, and more than ten locations in the United States, and the Plaintiff was either the sole, or one of a very, very small handful of African-American managers.

36. At the time Plaintiff WRIGHT was hired she informed Defendant RODRIGUEZ that she did have some medical issues, and that based upon where she lived, at the time, (Monument, CO) and the BALL office in Broomfield, CO (a distance of about 70 miles on I-25) she would like to know whether, on rare occasions typified by bad weather, she could work remotely from home.

Her ability to work remotely being a significant inducement to take the job with BALL, a factor discussed with Douglas Hedges, and to which, upon information and belief, RODRIGUEZ, was well aware.

37. The Plaintiff was informed, by RODRIGUEZ, that this would not be an issue whatsoever.

38. However, once Plaintiff commenced working at BALL, she was informed otherwise, and that her failure to show up, in the office, even on bad weather days, when I-25 was treacherous, would reflect poorly on her.

39. On June 7th, 2019 Defendant RODRIGUEZ sent an email to the Plaintiff the subject which was "Work from Home & Flexible Scheduling". See **Exhibit 5**. In this email RODRIGUEZ stated the policy of Defendant BALL that

> In general, it is our policy that managers can offer, at their discretion, occasional work from home arrangements for employees to accommodate ad hoc circumstances only (i.e., due to inclement weather . . .

40. On October 23rd, 2019 the Plaintiff emailed RODRIGUEZ, informing her that due to a forecast of 10" of snow, she would be working from home the next day.[1] The emailed response of RODRIGUEZ was

> That's fine if the weather's bad, but let's talk about his next time we are both in the office.

See **Exhibit 6**.

41. On October 30th, 2019 the Plaintiff received an email from RODRIGUEZ, criticizing her work habits, and specifying the alleged (uncorroborated) issue that

---

[1] According to Accuweather.com, from October 24 through October 30, 2019, <u>more than fifteen inches of snow</u> fell in Monument, CO, where the Plaintiff resided at that time. See *https://www.accuweather.com/en /us/monument/80132/october-weather/347703?year=2019 &view=list*

I wanted you to be aware that I received feedback/comments regarding your absence from the office.

See **Exhibit 7**.

42. At a subsequent in-person meeting between the Plaintiff and RODRIGUEZ, the Plaintiff inquired as to whether RODRIGUEZ was also questioning the absence of J.R. a Manager for Treasury, who had been permitted to work from home one day a week because he lived one hour from the office.  Significantly, and consistent with the disparate treatment accorded African-Americans, Mr. J.R. is not African-American.

43. Defendant RODRIGUEZ than promised to look into the issue, but never responded to the Plaintiff.

44. Plaintiff WRIGHT was hired at a salary of $119,999 *per annum*.

45. Although she held the position of "Director", she was, upon information and belief, the only person of color, with the title of Director, and, of the Twenty-One persons with the title of Director, she was the lowest paid — the next highest paid earning $16,000 a year more than her, and some Directors earning as much as almost $90,000 more than her.

46. Among those earning well in excess of her — all of whom are Caucasian — were (but are not limited to) the Director for IT Applications [Camille Gross-Rhode, earning $145,000], Director for Supply Chain [Scott Gabel, earning $135,000], Director for Sales [James Fox, earning $147,000], Director for Operations [James Pontiff, earning $145,000], Director for Accounting [Tara Cronin, earning $170,000], and the Director for Commercial Finance [Sarina Fiore, earning $140,000].

47. In the HR Department, itself, not only was she the sole African-American, but she was the lowest paid Director, her fellow Directors/Managers earning anywhere from $135,000 to $140,000 *per annum* — no one, save the Plaintiff, earning $119,999.

48. Indeed, upon information and belief, the only other African-American Human Resources Manager or Director was a manager in the Ohio plant of Defendant BALL.

49. In addition to that pay disparity, when hired Plaintiff was informed that she was to receive two weeks of paid vacation *per annum*.  Plaintiff later on discovered that the other Directors (who were Caucasian) all were receiving three weeks of paid holiday *per annum*.

50. In her position the Plaintiff successfully performed her duties throughout her employment, having created several programs to manage subjects like performance and vendors, created training programs, as well as renegotiated their recruitment contract, saving BALL about half a million dollars.

51. Indeed, up until the onset of her medical condition, WRIGHT's job performance was exemplary, described, for example, in emails from Defendant RODRIGUEZ and other executives as "HOORAY!!  Great job.", and "Fantastic[,] Tanique!  Great job.", and "Great job on this."  See **Exhibit 8**.

52. On or about March 18, 2020, the Plaintiff had a massive stroke which rendered her with a disability (as defined within the meaning of the Americans with Disabilities Act).

53. The Plaintiff was hospitalized for a period of two days.  As soon as she was capable of doing so, she reported this to the Vice President of Human Resources, Defendant RODRIGUEZ, in a cell phone call at approximately 8 a.m. on March 19th.

54. In that telephone call, WRIGHT advised RODRIGUEZ of her intent to file for leave under the Family and Medical Leave Act ("FMLA"), and apply for Short Term Disability ("STD") benefits.

55. Defendant RODRIGUEZ responded, in sum and substance, that WRIGHT need not worry about work and should, instead, concentrate on getting better.  No mention was ever made

regarding any need, plan, or possibility of the Plaintiff being terminated from her position at BALL.

56. Upon information and belief, Defendant RODRIGUEZ, delegated the responsibility of providing the Plaintiff with the necessary forms and information regarding FMLA leave and STD benefits.

57. For several days, to the Plaintiff's dismay, she received difficult and evasive assistance from Defendant BALL, its employees, staff, and her supervisor, Defendant RODRIGUEZ.

58. On March 25th, 2020 Plaintiff WRIGHT received an email from Sara King, the Director of Total Rewards at Defendant BALL, operating with the knowledge and at the direction of Defendant RODRIGUEZ, and on behalf of Defendant BALL, in which Ms. King stated that she would contact Sean Ochs, a HR Generalist, and have him send all of the necessary information and forms to apply for all benefits due the Plaintiff.

59. Based upon the subsequent actions, and upon information and belief, operating with the knowledge and at the direction of Defendant RODRIGUEZ, and on behalf of Defendant BALL, Ms. King never did this, and, again, intentionally and purposely, misled the Plaintiff.

60. In addition thereto, upon information and belief, in further knowing and intentional disregard for the rights of the Plaintiff, and in direct violation of the Plaintiff's rights under the privacy provisions of the Health Insurance Portability & Accountability Act, and relevant state law, confidential medical information regarding the Plaintiff's medical condition was passed around the company, including to individuals who had neither the right to have access to such information, nor the job requirement to have access to such information.

61. On the next day, March 26th, Plaintiff WRIGHT returned to the hospital for further medical treatment.

62. Despite the unequivocal representations as made above, without any prior warning or notice and without any justifiable cause, and with malicious intent guided only by a desire to engage in unlawful discriminatory behavior towards an African-American woman, over the age of forty, on or about March 27, 2020, the Plaintiff, TANIQUE WRIGHT, was informed that her position, at Defendant BALL had been eliminated.  This notification was made notwithstanding the fact that the position had been in existence prior to her being hired for it, and there being no indication whatsoever, prior to the Plaintiff suffering a stroke, that such position elimination was planned for, or even contemplated.

63. This notice of position elimination was communicated to the Plaintiff, by Colleen Callies, the Director of HR Operations, upon information and belief, operating with the knowledge, and at the direction of, Defendant RODRIGUEZ, and on behalf of Defendant BALL.

64. Ms. Callies, upon information and belief, operating with the knowledge, and at the direction of, Defendant RODRIGUEZ, and on behalf of Defendant BALL, who was fully informed as to the nature of the Plaintiff's medical condition, and recent onset of this condition, nevertheless, with total disregard for the likely medical ramifications — both physiological and psychological — upon the Plaintiff, who had suffered a stroke less than two weeks' prior thereto, heartlessly, callously and with presumed malice, informed the Plaintiff of her employment termination.

65. As a demonstration of the total disregard for the well-being and likely medical impact upon the Plaintiff, the Defendant RODRIGUEZ, chose not to impart this information to the Plaintiff herself, but to delegate it to one of her staff, and furthermore, such action demonstrated a callous and calculated disregard for the well-being of the Plaintiff, and complete derogation of her rights under federal, state and common law as set forth herein, and that such behavior could clearly and indisputably be imputed to Defendant BALL.

66. Following this notice of termination, the Plaintiff was offered a severance package, but, in violation of the Older Workers Benefits Protection Act, she was only given only one (1) week to consider it before the offer was voided.  As set forth in the Agreement,

> This Agreement shall be void and of no effect unless received by Colleen Callies on or before April 3, 2020.

See **Exhibit 1**, at ¶ 13.

67. As further evidence of the disparate treatment that the Plaintiff received, based upon her race, age, and other recognized discriminatory factors, upon information and belief, in or around December 2019 the then Director of Total Rewards (K.C.) was also separated and replaced after she had been rendered with a disability.  Significantly, Ms. C. (ethnically Caucasian) was allowed to stay employed while she trained her replacement (Sara King — also Caucasian), and was offered over three (3) weeks to consider her severance agreement.

68. Throughout the Plaintiff's employment with Defendant BALL, and the time she was reporting to Defendant RODRIGUEZ, she was the only African-American Director, and also the lowest paid person in her job category.

69. Defendant PLATINUM, upon information and belief, sets the employment policies, procedures, and guidelines, for all of the business entities which it controls, including Defendant BALL.

70. Defendant PLATINUM states, in its published "Business Practices", the following:

> We try to create value in any acquisition we make by focusing on stability throughout the transaction.  We protect vital business interests like customers, employees, and the supply chain; . . .

*https://www.platinumequity.com/practices*

71. This self-aggrandizing statement is belied by its actual business practices and policies, and the manner in which Defendant PLATINUM exercises supervisory authority over its properties, including Defendant BALL.

72. The evidence of this hypocritical statement is not only the treatment of the named Plaintiff herein, but also the fact that in the Plaintiff's former capacity as Director of Talent Management, WRIGHT had proposed a Diversity and Inclusion Program. She had suggested a budget for this project of the paltry sum of $12,000 for the entire calendar year of 2020, to not only focus on racial diversity, but also to celebrate such things as International Women's Month (*i.e.*, March). Upon information and belief, this was turned down on orders from Defendant PLATINUM.

73. On or about March 27, 2020 the Plaintiff filed a Complaint with the Colorado Civil Rights Division/EEOC. See **Exhibit 2**.

74. On August 5th, 2020, the EEOC issued a Right to Sue Letter. See **Exhibit 3**.

## SUMMARY OF CLAIMS UPON WHICH RELIEF IS DEMANDED

75. Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.* — As set forth above, the individual who hired Plaintiff WRIGHT (Hedges) was let go shortly after her being hired. She then reported to Defendant RODRIGUEZ. Both BALL and RODRIGUEZ, along with PLATINUM (as the owner of BALL), along with other named and un-named management employees, individually and conspiratorially (*i.e.*, Defendants JOHN DOEs), engaged in unlawful discriminatory conduct that led to her discharge.

76. Violation of tit. VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.* — as with the Section 1981 charge Plaintiff WRIGHT has clearly set forth the bases for actionable conduct directed against her based upon her race (African-American), as clearly demonstrated by her disparate discriminatory treatment by the named Defendants.

77. Violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2614, *et seq.* — the failure of Defendant BALL, acting through Defendant RODRIGUEZ (and other named and

un-named parties; Defendants JOHN DOEs), in carrying out the directed policies of Defendant PLATINUM to provide benefits under the FMLA.  While Plaintiff WRIGHT was not an employee for one year, as set forth under Section 2611(2)(a)(i), the purposeful, intentional, and directed action in discharging her with merely four days prior to her one year anniversary, demonstrates actionable conduct, not only by Defendants BALL and RODRIGUEZ, but also in carrying out the profit directed policies of Defendant PLATINUM.  The disparate treatment that the Plaintiff received is demonstrated by the fact that a Caucasian female employee, P.R. (who held the position of Assistant Controller), and was hired on January 21, 2019, had been granted FMLA benefits prior to her reaching her one year anniversary. P.R. gave birth prior to her date of hire, which, under the law meant that she should not have been eligible for FMLA, and Defendant BALL's own Leave Policy.  See **Exhibit 10**.  However, incredibly, and in direct contrast to the treatment received by the Plaintiff, she was allowed to take FMLA because her return date to work (3 months later) was after her one year statutory requirement.

78. This reprehensible behavior by all named Defendants — BALL, RODRIGUEZ, and PLATINUM — demonstrates actionable malice.

79. Violation of the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 623(a), *et seq.* — Plaintiff WRIGHT is over the age of forty, and is entitled to benefits and protections under the OWBPA, specifically certain terms of severance.  These terms of severance were clearly violated by the direct actions of Defendants BALL and RODRIGUEZ (among others), and indirectly operating at the behest of Defendant PLATINUM, in the manner and form in which she was offered a severance package and the terms thereof.

80. Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102(1)(A), (4)(E)(i), *et seq.* — Defendant BALL violated the ADA by (a) not providing a reasonable accommodation for Plaintiff WRIGHT to be able to continue in her position as a HR Director, and (b) Plaintiff WRIGHT was not offered the opportunity to take a paid medical leave.

81. Violation of various Colorado State Laws — these protect employees, such as Plaintiff WRIGHT, from age and race discrimination, under the Colorado Fair Employment Practices Act (Colo. Rev. Stat. ("CRS") § 24-34-402), Colorado Age Discrimination Statute (same), Colorado Disability Discrimination Statute (same), as actionable as against Defendants BALL and RODRIGUEZ, as against Defendant PLATINUM, and as against Defendants JOHN DOEs.

82. Breach of Contract — while Plaintiff WRIGHT, did not have a personal services contract with Defendant BALL, nor was he ever provided with any employee handbook that may exist.  Both Defendant BALL and Defendant PLATINUM set forth terms of employment that created a binding contractual relationship between the Plaintiff WRIGHT and the named Defendants.   The websites for both Defendant BALL and Defendant PLATINUM contain language such as that set forth in Defendant BALL's "Ethics Code of Conduct".  This Code of Conduct specifically provides that the company "do[es] not tolerate . . . discrimination . . . with respect to . . . race . . . age . . . disability . . ."  See **Exhibit 9**.  The Code of Conduct contains no contractual limiting language precluding it from imposing a contractual relationship between employees (such as Plaintiff WRIGHT) and Defendants BALL and PLATINUM, and is thus actionable under its terms.  *Cf.*, *Allabashi v. Lincoln National Sales Corp. of Colorado-Wyoming,* 824 P.2d 1, 3 (Colo. App. 1991).  As there is no limitation on the contractual language therein, the failure of Defendant BALL (acting through its agent RODRIGUEZ) in discriminating against Plaintiff WRIGHT, on the basis of age, and race, are actionable.

83 Other tortious conduct — The named Defendants, based on the allegations set forth herein, further established the elements for causes of action, for which the law provides money damages, including, but not limited to, violation of the privacy rights of the Plaintiff, fraudulent inducement, fraud, and other causes of action as set forth herein.

## AS AND FOR A FIRST CAUSE OF ACTION

Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.* — as Against
Defendants BALL METALPACK, JANICE RODRIGUEZ, PLATINUM
EQUITY, and JOHN DOEs

84. Plaintiff TANIQUE WRIGHT repeats, re-iterates and re-alleges ¶¶ 1 through 83, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this First Cause of Action.

85. The actions of the named Defendants, jointly and severally, constituted "adverse employment actions", such that (a) the Plaintiff belongs to a protected class, (b) the Plaintiff has suffered an adverse employment action, and (c) the adverse action occurred under circumstances giving rise to an inference of discrimination. *E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 800 (10th Cir. 2007).

86. The Plaintiff is an African-American female, and is thus a member of a protected class.

87. As set forth above (*passim*), and incorporated herewith ¶¶ 91 through 103, *supra*, the Plaintiff suffered multiple adverse employment actions based upon her protected class status.

88. The actions of the named Defendant BALL, and its supervisory parent Defendant PLATINUM, acting by, through and with the full knowledge, of its agent Defendant RODRIGUEZ, and Defendants JOHNDOEs, all took place in the employment context of the Plaintiff WRIGHT, giving rise to an inference of discrimination.

89. This reprehensible discriminatory conduct by all named Defendants — BALL, RODRIGUEZ, PLATINUM, and JOHN DOEs — demonstrates actionable malice, for which

damages pursuant to the statute, to lost wages and other compensatory damages, plus interest, in an amount of not less than $5,000,000, in addition to punitive and exemplary damages, in an amount of not more than $10,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION

Violation of tit. VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.* — as Against Defendants BALL METALPACK, JANICE RODRIGUEZ, PLATINUM EQUITY, and JOHN DOEs

90. Plaintiff TANIQUE WRIGHT repeats and re-iterates ¶¶ 1 through 89, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this Second Cause of Action.

91. Tit. VII of the 1964 Civil Rights Act precludes discriminatory behavior by an employer based upon race.  42 U.S.C. § 2000e(a)(1).

92. Defendant BALL, acting by and through its designated agent Defendant RODRIGUEZ, along with Defendants JOHN DOEs, and with the full acquiescence of Defendant PLATINUM, engaged in unlawful disparate discriminatory conduct in the treatment of Plaintiff WRIGHT.

93. Plaintiff WRIGHT was the only African-American female at the corporate office in Broomfield, CO out of eighty employees.

94. Plaintiff WRIGHT was the only African-American Director in the company.

95. Plaintiff WRIGHT was the lowest paid Director not only in the Human Resources Department, but also the lowest paid Director in the entire company.

96. Plaintiff WRIGHT earned a salary of $120,000 *per annum*; her Caucasian peers all earned more money than that.  For example, Colleen Callies, Director of HR Operations earned $137,000 *per annum*; Larissa Kirkland, Senior Counsel, earned $140,000 *per annum*; and Sarah King, Director of Total Rewards, earned $135,000 *per annum*.

97. Plaintiff WRIGHT was given five days to review her separation agreement while her white peer K.C. (previous Director of Total Rewards who was terminated in January 2020) was given three weeks, plus additional time after her accident.

98. When hired, Plaintiff WRIGHT was only given two weeks of vacation as a Director while white Directors were given Three to Four weeks of vacation when hired.

99. Although Plaintiff WRIGHT was hired in April 2019, just one year later she was discharged supposedly on the basis that the position had been eliminated, despite the fact that her Director position had been one that had existed in the company for many years' past.

100. Plaintiff WRIGHT suggested creating a Diversity Committee to Defendant RODRIGUEZ, and was told the company could create the committee, and Plaintiff WRIGHT could sit on the board, however, incredibly, in a wanton disregard for Defendant's BALL's obligations under the Civil Rights Act, specifically precluded Plaintiff WRIGHT — the sole African-American Director — from being the named Leader of the group, notwithstanding her Director status in the HR Department.

101. Defendant RODRIGUEZ, subsequently informed Plaintiff WRIGHT that there was no budget for such a committee because Defendant PLATINUM did not think it was important enough.

102. For Black History Month it was decided to hang photos of African-Americans who made a difference and contribution to American society.  The Horsham, PA manufacturing plant of Defendant BALL received complaints and they wanted the local Human Resources Department to remove these posters because they believed that Defendant BALL did not care about black employees.  Instead of investigating this matter, neither Defendant RODRIGUEZ, nor Defendants JOHN DOEs merely ignored the issue.

103. These acts, along with those set forth above, clearly and unmistakably set forth a pattern of discriminatory behavior by the named Defendants.

104. This reprehensible discriminatory conduct by all named Defendants — BALL, RODRIGUEZ, PLATINUM, and JOHN DOEs — demonstrates actionable malice, for which damages pursuant to the statute, to lost wages and other compensatory damages, plus interest, in an amount of not less than $5,000,000, in addition to punitive and exemplary damages, in an amount of not more than $10,000,000.00.

### AS AND FOR A THIRD CAUSE OF ACTION
Violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2614, *et seq.*
— as Against Defendants BALL METALPACK, JANICE RODRIGUEZ,
PLATINUM EQUITY, and JOHN DOEs

105. Plaintiff TANIQUE WRIGHT repeats and re-iterates ¶¶ 1 through 104, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this Third Cause of Action.

106. Defendant BALL, acting through Defendant RODRIGUEZ (and other named and un-named parties, Defendants JOHN DOEs), in carrying out the directed policies of Defendant PLATINUM knowingly and intentionally failed to provide benefits under the FMLA. While Plaintiff WRIGHT was not an employee for one year, as set forth under Section 2611(2)(a)(i), the purposeful, intentional, and directed action in discharging her with merely four days prior to her one year anniversary, demonstrates actionable conduct, not only by Defendants BALL and RODRIGUEZ, but also in carrying out the profit directed policies of Defendant PLATINUM.

107. The disparate treatment that the Plaintiff received is demonstrated by the fact that a Caucasian female employee, P.R. (who held the position of Assistant Controller), and was hired on January 21, 2019, had been granted FMLA benefits prior to her reaching her one year anniversary. P.R. gave birth prior to her date of hire, which, under the law meant that she should

not have been eligible for FMLA.  However, incredibly, and in direct contrast to the treatment received by the Plaintiff, she was allowed to take FMLA because her return date to work (3 months later) was after her one year statutory requirement.

108. This reprehensible discriminatory conduct by all named Defendants — BALL, RODRIGUEZ, PLATINUM, and JOHN DOEs — demonstrates actionable malice, for which damages pursuant to 42 U.S.C. § 2617(a)(1)(A)(I), equal to lost wages and other compensatory damages,, plus interest, in an amount of not less than $5,000,000, in addition to punitive and exemplary damages, in an amount of not more than $10,000,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION
Violation of the Age Discrimination in Employment Act ("ADEA"), as amended
by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 623(a),
*et seq.* — as Against Defendants BALL METALPACK, JANICE RODRIGUEZ,
PLATINUM EQUITY, and JOHN DOEs

109. Plaintiff TANIQUE WRIGHT repeats and re-iterates ¶¶ 1 through 108, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this Fourth Cause of Action.

110. The Plaintiff, over the age of forty at the time of the Defendants' conduct,  is entitled to rights as set forth by the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. §§ 623(a), 631(a).

111. Pursuant to the ADEA/OWBPA the Plaintiff is entitled to a 21-day period in which to consider any severance agreement that waives the employee's rights under the OWBPA.  29 C.F.R. § 1625.22(e)(1).  See **Exhibit 1**, at ¶¶ 2.2, 2.9, 9.2.

112. The Severance Agreement provided to the Plaintiff, on or about March 27, 2020, provided that

> This Agreement shall be void and of no effect unless received by Colleen Callies on or before April 3, 2020.

See **Exhibit 1**, at ¶ 13.

113. This limited time period violated the ADEA/OWBPA, for which the Plaintiff is entitled to damages of lost wages of $5,000,000 and other compensatory damages, plus liquidated damages as deemed appropriate.

114**.** These terms of severance were clearly violated by the direct actions of Defendants BALL, RODRIGUEZ, PLATINUM, and JOHN DOES, in the manner and form in which she was offered a severance package and the terms thereof.

### AS AND FOR A FIFTH CAUSE OF ACTION
Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102(1)(A), (4)(E)(i), *et seq.* — as Against Defendants BALL METALPACK, JANICE RODRIGUEZ, PLATINUM EQUITY, and JOHN DOEs

115. Plaintiff TANIQUE WRIGHT repeats and re-iterates ¶¶ 1 through 114, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this Fifth Cause of Action.

116. On or about March 18, 2020 the Plaintiff WRIGHT suffered a stroke, affecting her major life activities including, but are not limited to, the ability to care for herself, perform manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

117. As such the Plaintiff had suffered a "disability" within the definition of the ADA. 42 U.S.C. § 12102(1), (2), (4).

118. As such the Plaintiff was entitled to a "reasonable accommodation", to be offered by her employer, Defendant BALL, by and through its agents, Defendant RODRIGUEZ, and Defendants JOHN DOEs, and as effected by Defendant PLATINUM, so that she "can perform the essential functions of [her] employment position". 42 U.S.C. § 12111(8), (9).

119. Rather than provide this "reasonable accommodation", the named Defendants chose to unlawfully discharge the Plaintiff from her employment.  See ¶¶ 64 through 67 *supra*.

120. Furthermore, not only was the Plaintiff not offered any "reasonable accommodation" due to her disability (notwithstanding that a Caucasian employee who suffered a disability had been offered such an accommodation, see ¶ 67 *supra*), but the named Defendants, jointly and severally, did not even permit the Plaintiff the opportunity to request and/or suggest such an accommodation.

121. Furthermore, and in violation of the ADA, the Plaintiff was never offered any Leave of Absence, Part-Time Employment, or Re-assignment.

122. In further violation of the ADA, per Defendant BALL's Leave of Absence policy at pp. 7-8, Plaintiff WRIGHT could have taken an unpaid leave during this time saving her position, however, this option was never offered to her.  See **Exhibit 10**.

123. These actions of the named Defendants constituted both individually, and in totality, discriminatory conduct under the ADA.  42 U.S.C. § 12112(a), (b)(5)(A)-(B).

124. This reprehensible discriminatory conduct by all named Defendants — BALL, RODRIGUEZ, PLATINUM, and JOHN DOEs — demonstrates actionable malice and discriminatory behavior, for which damages, equal to lost wages and other compensatory damages,, plus interest, in an amount of not less than $5,000,000, and punitive and exemplary damages in an amount of not more than $10,000,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION

Violation of the Colorado Fair Employment Practices Act (Colo. Rev. Stat. ("CRS") § 24-34-402) — as Against Defendants BALL METALPACK, JANICE RODRIGUEZ, PLATINUM EQUITY, and JOHN DOEs

125. Plaintiff TANIQUE WRIGHT repeats and re-iterates ¶¶ 1 through 124, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this Sixth Cause of Action.

126. The Colorado Fair Employment Practices Act (Colo. Rev. Stat. ("CRS") § 24-34-402 precludes an employer from engaging in discriminatory conduct based upon race, age, and other recognized protected statuses (*e.g.*, religion, national origin, *etc.*).

127. As a necessary predicate the Plaintiff (without the benefit of counsel) filed a claim of discrimination with the Colorado Civil Rights Division ("CCRD").  See **Exhibit 2**.

128. On August 5th, 2020, the EEOC issued a right to sue letter.  See **Exhibit 3**.

129. While the original complaint only named Defendant BALL, also, as parties thereto are Defendant RODRIGUEZ, Defendants JOHN DOEs, and Defendant PLATINUM.

130. While the failure to specify a named party in a CCRD complaint may preclude them from being named as a party defendant in a subsequent civil rights law suit (*Bank v. Allied Jewish Federation of Colorado*, 4 F. Supp.3d 1238 (D. Colo. 2013)), any charge of discrimination is to be liberally construed to include other parties that would be deemed liable in any related civil rights action, where the complainant's originally filed complaint was done without the advice of counsel. *Romero v. Union Pacific RR*, 615 F.2d 1303, 1310-11 (10th Cir. 1980).

131. The Plaintiff herein filed her CCRD complaint *pro se*.

132. Plaintiff re-alleges herein the underlying facts as set forth *supra*, and as related to Cause of Action First through Cause of action Fifth.

133. This reprehensible discriminatory conduct by all named Defendants — BALL, RODRIGUEZ, PLATINUM, and JOHN DOEs — demonstrates actionable malice and discriminatory behavior, for which damages pursuant to C.R.S. § 24-34-405(c), (d), and 42 U.S.C. § 1981a, equal to lost wages and other compensatory damages,, plus interest, in an amount of not less than $5,000,000, and punitive and exemplary damages in an amount of not more than $10,000,000.00.

### AS AND FOR A SEVENTH CAUSE OF ACTION
Breach of Contract — as Against Defendants BALL METALPACK, JANICE RODRIGUEZ, PLATINUM EQUITY, and JOHN DOEs

134. Plaintiff TANIQUE WRIGHT repeats and re-iterates ¶¶ 1 through 133, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this Seventh Cause of Action.

135. An employee who is hired for an indefinite period is presumed to be an at-will employee, but this presumption may be rebutted. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711-12 (Colo. 1987). The Plaintiff herein was such an employee.

136. Policies contained in an employee manual or in policy statements, or Rules of Conduct, for example, may, under certain circumstances, serve as the basis for a claim of breach of contract, and may be asserted by employees such as the Plaintiff WRIGHT. *Adams County School Dist. No. 50 v. Dickey,* 791 P.2d 688, 694 (Colo. 1990).

137. Written disclaimers that the manual or policy may not be deemed to create a contractual relationship may preclude an action for breach of contract (*Evenson v. Colo. Farm Bureau Mut. Ins. Co.,* 879 P.2d 402, 409 (Colo. App. 1993)), however, no such disclaimers appear in the proffered bases for breach. See **Exhibit 9**, **Exhibit 10**.

138. The website for Defendant BALL contains a "Business Ethics Code of Conduct". This Code of Conduct specifically provides that the company "do[es] not tolerate . . . discrimination . . . with respect to . . . race . . . age . . . disability . . ." See **Exhibit 9**.

139. Defendant PLATINUM states, in its published "Business Practices", the following:

> We try to create value in any acquisition we make by focusing on stability throughout the transaction.  We protect vital business interests like customers, employees, and the supply chain; . . .

*https://www.platinumequity.com/practices*

140. Plaintiff WRIGHT could reasonably rely upon these contractual promises that she would be treated fairly and honestly without being the victim of discriminatory conduct based upon race or age by Defendant BALL and Defendant PLATINUM.

141. Plaintiff WRIGHT could reasonably have anticipated that her supervisor, Defendant RODRIGUEZ, and those who carried out her orders (Defendants JOHN DOEs) would similarly act in accordance with the stated binding policies of both Defendant BALL and Defendant PLATINUM.

142. As laid out in Causes of Action One through Five, and as re-alleged herein, the named Defendants have breached their contractual obligation to the Plaintiff WRIGHT.

143. In addition thereto, Defendant BALL breached its contractual obligation under its published Policies on Leaves and Absences.  See **Exhibit 10**.

144. The aforementioned Policy provided for both Short Term Disability (see ¶ 3), and Unpaid Leaves and Absences (see pp. 7-8).

145. The Plaintiff was a qualified employee, and the Defendant breached its contractual obligation by failing to provide wither of these benefits to the Plaintiff.

146. The Plaintiff has been damaged and is entitled to damages in the form of lost wages and other compensatory damages, in the amount of $5,000,000.00, and is entitled to both punitive and exemplary damages in an amount of no more than $10,000,000.00.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
Fraud in the Inducement — as Against Defendants BALL METALPACK,
JANICE RODRIGUEZ, PLATINUM EQUITY, and JOHN DOEs

147. Plaintiff TANIQUE WRIGHT repeats and re-iterates ¶¶ 1 through 146, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this Eighth Cause of Action.

148. In an action for fraudulent inducement, it is necessary to establish that (1) there was a material misrepresentation of a material fact, (2) there was reliance upon that material fact, (3) reliance upon that representation was reasonable, and (4) that reliance resulted in damages to the plaintiff. *J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 132 (Colo. 2007).

149. As an inducement to take the position with Defendant BALL, the Plaintiff was assured that there would be no issues regarding her being able to work remotely, especially in consideration of the weather issues. See ¶¶ 36, 37, *supra*.

150. The Plaintiff further relied upon the reasonable assumption that her treatment by her employer, Defendant BALL, and her immediate supervisor, Defendant RODRIGUEZ, would not be disparate from other employees due to her race or age.

151. The Plaintiff reasonably relied upon these representations in making her decision to decline offers from two other companies, and chose to take the offer from Defendant BALL.

152. However, at the first sign of bad weather, which precluded her from traveling to work (see ¶¶ 38 through 41, and n. 1 *supra*), she was berated by Defendant RODRIGUEZ.

153. Furthermore, as set forth *passim*, the Plaintiff was the intentional and malicious target of discriminatory conduct based both upon her race and age, and as perpetrated by Defendant

BALL, its agent Defendant RODRIGUEZ, acting with the complicity of Defendants JOHN DOEs, and with the knowing acquiescence of Defendant PLATINUM.

154. The Plaintiff has been damaged and is entitled to damages in the form of lost wages and other compensatory damages, in the amount of $5,000,000.00, and is entitled to both punitive and exemplary damages in an amount of no more than $10,000,000.00.

**AS AND FOR A NINTH CAUSE OF ACTION**
Civil Conspiracy — as Against Defendants BALL METALPACK, JANICE
RODRIGUEZ, PLATINUM EQUITY,
and JOHN DOEs

155. Plaintiff TANIQUE WRIGHT repeats and re-iterates ¶¶ 1 through 154, as if set forth herein, and incorporates herein all such facts and allegations as are relevant herein to this Ninth Cause of Action.

156. A civil conspiracy is established where (1) there exists an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result.  *Magin v. DVCO Fuel Sys., Inc.,* 981 P.2d 673 (Colo. App. 1999).

157. While tortious liability for civil conspiracy is not actionable, *per se*, it is a derivative cause of action based upon "the actual damages resulting from the acts done in furtherance of the conspiracy."  *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1055 (Colo. 1995).  All that is necessary is "that the underlying acts be unlawful [to] create an independent cause of action."  *Double Oak Constr., L.L.C. v. Cornerstone Develop. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2004).

158. As set forth above, the defendant BALL, acting through the personage of Defendant RODRIGUEZ, and assisted by the unlawful discriminatory actions of, among others, Colleen Callies, and other Defendants JOHN DOEs, did violate the civil rights of the named Plaintiff in their actions taken in violation of the ADEA/OWBPA, the 1866 Civil Rights Act, Tit. VII of the Civil Rights Act of 1964, and the other enumerated statutes, both federal and state, above.

159. The "object to be accomplished", being the termination of an African-American female over the age of forty; the agreement being that between Defendant RODRIGUEZ, and Colleen Callie, and other un-named Defendants JOHN DOEs; said agreement to terminate the Plaintiff in violation of the cited statutes above; and the damages of loss of income.

160. This tortious conduct has damaged the named Plaintiff in the amount of $5,000,000, and the award of punitive or exemplary damages in an amount to be determined at trial, but, in no event more than $10,000,000.00.

WHEREFORE, Plaintiff, TANIQUE WRIGHT, by and through her attorney of record, respectfully request judgment as follows,

(a) In favor of Plaintiff and against Defendants;

(b) On the First Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(c) On the Second Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(d) On the Third Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(e) On the Fourth Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(f)   On the Fifth Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(g)   On the Sixth Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(h)   On the Seventh Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(i)   On the Eighth Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(j)   On the Ninth Cause of Action, damages in the amount of five million dollars ($5,000,000.00);

(k)   Punitive and exemplary damages, where applicable, in an amount of no more than ten million dollars ($10,000,000.00), pursuant, but not limited, to 42 U.S.C. § 1981a(a)(1), (a)(2), (b)(1);

(l)   Pre-judgment and post-judgment interest, at the statutory rate of interest of eight percent per annum compounded annually (C.R.S. § 5-12-102(1)(b), (2));

(m)  Award of Attorney fees, and costs and disbursements, as set forth under 42 U.S.C. § 1988; and,

(n)   For such other and further relief as this Court shall deem just, proper and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues.  F.R.Civ.P. Rule 38.

By her Attorney:
LAW OFFICE OF BERNARD V. KLEINMAN, PLLC

By <u>/s/ *Bernard V. Kleinman*</u>
    Bernard V. Kleinman, Esq.
    108 Village Square
    Suite 313
    Somers, NY 10589-2305
    Tel. 914.644.6660
    Fax 914.694.1647
    *attrnylwyr@yahoo.com*

Dated: August 11, 2020

## **VERIFICATION**

State of Colorado}
County of _E D  T La_       }          *s.s.*:

I am Tanique Wright, the named Plaintiff herein, and I do solemnly affirm, under the laws against perjury of the United States, that I have read the annexed Complaint, and that all matters are true to my knowledge, and as to those matters stated to be based upon information and belief, as to those matters, I believe them to be true.

Tanique Wright

Sworn to Before Me
This _9th_ Day of August 2020

Notary Public

YOLANDA B WALKER
Notary Public
State of Colorado
Notary ID # 19914016961
My Commission Expires 08-18-2022

*Law Office of Bernard V. Kleinman, PLLC*
*108 Village Sq., Ste. 313*
*Somers, NY 10589-2305*